UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

TERRI LYNN SLOTMAN,

     Debtor.

_____/

JEFF A. MOYER, Chapter 7 Trustee,

     Plaintiff,

v.

RICHARD ALAN SLOTMAN and EUGENE D.
SLOTMAN d/b/a GENE'S MACHINE REPAIR,

     Defendants.

_____/

Case No: GG 11-11037
Chapter 7

Adversary Proceeding
No. 12-80232

## OPINION PARTIALLY GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Appearances:

Jessica B. Allmand, Esq. and Frances Belzer Wilson, Esq., Bloomfield Hills, Michigan, attorneys for Jeff A. Moyer, Chapter 7 Trustee, Plaintiff.

Ronald J. Vander Veen, Esq., Holland, Michigan, attorney for Richard Alan Slotman and Eugene D. Slotman, Defendants.

## I. INTRODUCTION.

In January 2011, Richard Alan Slotman transferred his ownership interest in Gene's

Machinery Repair (the "Business" ) to his father, Eugene D. Slotman (Richard and Eugene

Slotman are referred to collectively herein as the "Defendants"). At the time of the transfer,

Richard Slotman was married to Terri Lynn Slotman (often referred to herein as the

"Debtor"). Four months later, in May 2011, Richard Slotman commenced a divorce action against Terri Slotman. After the divorce case was filed, but prior to entry of a judgment of divorce, Terri Slotman filed a voluntary petition under chapter 7 of the Bankruptcy Code.[1]

Jeff A. Moyer, the chapter 7 trustee (the "Trustee") in Terri Slotman's bankruptcy case, filed this adversary proceeding primarily seeking to avoid the prepetition, pre-divorce transfer of the Business as a fraudulent conveyance. The Trustee alleges that Terri Slotman had an ownership interest in the Business because it was, or would have been, part of the parties' marital estate under Michigan law. For the reasons that follow, the court rejects the Trustee's assertion. To the extent the Trustee's claims rely on the Debtor's asserted marital property interest, the claims shall be dismissed for no cause of action.

## II. JURISDICTION.

This court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a); Local Rule 83.2(a) (W.D. Mich.). This adversary proceeding is a statutory core proceeding. 28 U.S.C. § 157(b)(2)(E) (orders to turn over property of the estate) & (H) (proceedings to determine, avoid, or recover fraudulent conveyances).

Both the Plaintiff and the Defendants filed statements indicating their express consent to this court entering a final order in this adversary proceeding. (AP Dkt. Nos. 18 & 20.) Therefore, notwithstanding the holdings in Stern v. Marshall, __ U.S. __, 131 S. Ct.

---

[1] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive. Specific provisions of the Bankruptcy Code are referred to in this opinion as "§__."

2594, 180 L.Ed.2d 475 (2011) and Waldman v. Stone, 698 F.3d 910 (6th Cir. 2012), this court strongly believes it is constitutionally authorized to enter a final order. See Tibble v. Wells Fargo Bank, N.A. (In re Hudson), 455 B.R. 648, 656 (Bankr. W.D. Mich. 2011) (the Stern decision is extremely narrow; "[e]xcept for the types of counterclaims addressed in Stern v. Marshall, a bankruptcy judge remains empowered to enter final orders in all core proceedings"); see also McClarty v. University Liggett School (In re Karolak), AP No. 13-04394, 2013 WL 4786861 (Bankr. E.D. Mich. Sept. 6, 2013) (bankruptcy court has constitutional authority to enter a final order dismissing trustee's fraudulent conveyance complaint because both parties consented to entry of a final judgment and the fraudulent conveyance claims at issue are core proceedings).

## III. FACTS.

The material facts pertaining to the Debtor's alleged marital property interest in the Business are not in dispute. In 1986, Defendant Eugene Slotman established Gene's Machinery Repair. (Dft. Motion for Summary Judgment, AP Dkt. 29, Exh. 1; Plf. Response to Motion for Summary Judgment, AP Dkt. No. 32, Exh. C.)[2] The Business specialized in reconditioning steel rods for blueberry de-stemming equipment and in providing parts for such equipment. (Id.) Eugene Slotman operated the Business out of his barn for a number of years. (Id.)

In 2002, Eugene Slotman transferred the Business to his son, Richard Slotman. The parties' characterization of this transfer differ slightly. In their affidavits and deposition

---

[2] For ease of reference, the exhibits to the Defendants' Motion for Summary Judgment shall be referred to herein by their exhibit number, e.g. "Dft. Exh. 1, 2, 3," etc. The exhibits to the Plaintiff's Response shall be referred to as "Plf. Exh. A, B, C," etc.

testimony, Eugene and Richard Slotman explained that Eugene "loaned" the Business to his son, with the hope that it would provide Richard with extra income while he was experiencing financial troubles. (Plf. Exh. C & D; Dft. Exh. 1 & 15.) Eugene Slotman gave Richard possession of the business equipment, consisting of a compressor, drill press, small lathe, and some other small tools, with the understanding that Richard would return the equipment and ownership of the Business if he ever decided to stop operating it. (Id.) Richard and Eugene Slotman stated that there was no consideration paid to Eugene for the Business, although Richard said he agreed to pay rent for use of Eugene's barn at $1,000 per month. (Id.) Richard Slotman also explained that he periodically gave some of the profits from the Business back to his parents to repay them for the financial help they had given him over the years. (Plf. Exh. N.)

Terri Slotman's description of the transfer of the Business is generally consistent with Richard and Eugene's explanation, except that she recalled that Eugene intended to give the Business "us," i.e., to Terri and Richard jointly. (Plf. Exh. I, at 13-15.) She also explained that in exchange for the Business, she and Richard agreed to pay a percentage of their profits to Eugene. (Id. at 14-15.)

All the parties agree, however, that *no* written documentation of the transfer was prepared. (Plf. Exh. C, D & I; Dft. Exh. 1 & 15.) It is also undisputed that, after the transfer, Richard Slotman filed a Business Registration Certificate for a Person Conducting Business Under an Assumed Name or Partnership (the "Certificate of Assumed Name") with the Clerk of the Court for Allegan County, Michigan. (Plf. Exh. B; Dft. Exh. 4.) The Certificate of Assumed Name, and a renewal filed in 2007, both list Richard Slotman as

the sole owner of the Business. (Plf. Exh. B & M; Dft. Exh. 4 & 5.) In addition, from 2002 through 2010, Richard and Terri Slotman signed and filed annual joint tax returns. (Plf. Exh. I; Dft. Exh. 6-14) The tax returns identity Richard as the sole proprietor of the Business, and list income from the Business as self-employment income for Richard. (Dft. Exh. 6 - 14.)

There is also no dispute that Terri Slotman made significant contributions toward operation of the Business. She testified that she worked long hours drilling rods for the Business, both in her basement and in Eugene's barn. (Plf. Exh. I.) She also took orders, picked up parts and made deliveries for the Business. (Id.) Terri Slotman did not receive a salary or wages for her work. (Id.) At the same time, Richard Slotman took sole responsibility for the financial aspects of the Business. (Id.) He kept the financial records, handled the billing, wrote checks from the Business account, and made all decisions regarding the management of the Business. (Id.) Although Richard and Terri Slotman maintained at least two separate bank accounts at Huntington National Bank, one for the Business and one for their personal finances, both parties testified that the funds were commingled at times. (Plf. Exh I & N.) Richard Slotman explained that Business expenses were sometimes paid from the couple's personal funds. (Plf. Exh. N, at 43-44.) Terri Slotman testified that proceeds from the Business were often used to pay general household expenses. (Plf. Exh. I, at 56.)

In January, 2011, Richard Slotman transferred the Business back to his father, Eugene Slotman. (Plf. Exh. C & D; Dft. Exh. 1 & 15.) Richard Slotman filed a Notice of Dissolution of Co-Partnership or Business Under Assumed name on January 18, 2011.

(Plf. Exh. E; Dft. Exh. 16.) Eugene Slotman re-took possession of the Business equipment, some of which had never left his barn. (Plf. Exh. D; Dft. Exh. 15.) On January 19, 2011, Eugene Slotman filed a new Certificate of Assumed Name listing himself as owner of Gene's Machinery Repair. (Dft. Exh. 17.)

On May 23, 2011, Richard Slotman filed divorce proceedings against Terri Slotman in the Ottawa County Circuit Court. (Plf. Exh J; Dft. Exh 2.) Approximately five months later, on October 31, 2011, while the divorce proceedings were pending but prior to entry of a judgment of divorce, Terri Slotman filed a voluntary chapter 7 petition in this court. (Dkt. No. 1.) Jeff A. Moyer was appointed as the chapter 7 trustee in the Debtor's bankruptcy case.

On June 6, 2012, the Trustee filed this adversary proceeding against Richard and Eugene Slotman. (AP Dkt. No. 1.) The Trustee's complaint alleges that the pre-divorce transfer of the Business from Richard Slotman to his father, Eugene Slotman, in January, 2011, constituted an actual and constructive fraudulent transfer of the Debtor's property under § 548(a)(1)(A) and (B), and under § 544(b) and applicable Michigan law incorporated within the Bankruptcy Code. Although the complaint states that the Business was transferred by Richard Slotman, it asserts that the Debtor had a one-half interest in the Business as of the date of the transfer, because the Business was part of her marital estate. The complaint further alleges that Richard and Eugene Slotman were unjustly enriched by the transfer, and that Eugene Slotman should be compelled to turn over the Debtor's interest in the Business to the Trustee under § 542.

The Defendants filed a motion for summary judgment on April 11, 2013, alleging

that the fraudulent transfer counts of the Trustee's complaint should be dismissed for no cause of action because the Debtor did not have an ownership interest in the Business when it was transferred to Eugene Slotman in January 2011, prior to the initiation of the divorce proceedings.[3] (AP Dkt. No. 29.) The Trustee filed a response to the motion, and hearing was held on June 24, 2013. (AP Dkt. Nos. 32 & 34.) After the hearing, the Trustee and the Defendants filed supplemental briefs. (AP Dkt. Nos. 35, 36, 39 & 43.) The court subsequently took the matter under advisement, advising the parties that the issue presented would require more time than usual to be determined.

## IV. ISSUE.

In this adversary proceeding, the various counts of the Trustee's complaint have one common element: they each require the Trustee to prove that the Debtor had an interest in the Business such that the prepetition, pre-divorce transfer of the Business from Richard to Eugene Slotman constituted a transfer of an interest of the Debtor in property. The Trustee asserts that the Debtor had an ownership interest in the Business because it was, or eventually would have become, part of her marital estate.[4] Accordingly, the issue

---

[3] The Defendants' motion specifically seeks summary judgment on the fraudulent transfer counts of the Trustee's complaint. However, as discussed in Part V.C. infra, this court's conclusion that the Debtor lacked a property interest in the Business at the time of the transfer also compels dismissal of the Trustee's turnover and unjust enrichment counts.

[4] The Trustee's arguments regarding the nature of the Debtor's alleged interest in the Business are convoluted, similar to novels about "shape-shifting." In his initial brief in opposition to the Defendants' motion for summary judgment, the Trustee seemed to suggest that Richard Slotman and the Debtor were conveyed joint ownership of the Business as a result of the transfer from Eugene Slotman in 2002. However, a careful reading of the Trustee's assertions reveals that this argument appears to be based solely on the fact that the Business was acquired during the marriage, the Debtor contributed to operation of the Business, and profits were shared between the spouses. The Trustee

presented is whether the Debtor had an interest in the Business. Because the transfer of the Business occurred prior to the divorce and prior to the Debtor's bankruptcy case, this court must consider when the Debtor's potential marital property interest arose and whether it was vested at the time the transfer was made.

## V. DISCUSSION.

### A. *Summary Judgment Standard.*

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, states that a court shall enter summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc.,

---

cites these facts as evidence that the Debtor had an ownership interest in the Business *as marital property*. Plaintiff's Brief in Opposition to Summary Judgment, AP Dkt. No. 32, at 5-15.

The Trustee clarified his position at the hearing on the motion for summary judgment and in supplemental briefing. At the hearing, counsel for the Trustee stated: "the [T]rustee's position has been that it is through the marital interest of Richard and Terri Slotman that the [D]ebtor, Terri Slotman, has acquired . . . this interest." Transcript of Hearing on Defendants' Motion for Summary Judgment, AP Dkt. No. 44, at 30. In his supplemental reply brief, the Trustee further states that he "has never alleged that the Debtor's interest in the Business is a result of the Business being a partnership or joint venture. Instead, [the Trustee] claims that Debtor has an interest in the Business by way of the Business being property of her marital estate (i.e. the Business was purchased during the marriage, etc.)." Plaintiff's Reply to Defendants' Supplemental Brief, AP Dkt. No. 43, at 2.

Accordingly, for purposes of this opinion, the court has assumed that the Debtor did not acquire a *direct* joint ownership interest in the Business when it was transferred to Richard Slotman in 2002. This court has focused its analysis on whether the Debtor had an interest in the Business because it was marital property.

477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

The initial burden to demonstrate the absence of a genuine dispute of material fact is on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Upon such a showing, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine dispute of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356 (1986). All facts and related inferences are to be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510 (emphasis in original). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.

B.   *The Trustee's Fraudulent Conveyance Counts: Did the Debtor Have a Property Interest in the Business Merely Because it Was a "Marital Asset?"*

Section 548(a)(1) of the Bankruptcy Code permits the trustee to avoid a transfer "of an interest of the debtor in property" made within two years before the petition date, to the extent such transfer constitutes an actual or constructive fraudulent conveyance. 11 U.S.C. § 548(a)(1). Similarly, § 544 permits the trustee to avoid a transfer "of an interest of the debtor in property" that an unsecured creditor could have set aside as a fraudulent conveyance under applicable state law. 11 U.S.C. § 544(b); Mich. Comp. Laws Ann.

9

§ 566.31 et seq. (the Michigan Uniform Fraudulent Transfer Act, "MUFTA").  In this adversary proceeding, there is no dispute that Richard Slotman acquired the Business in 2002.  At that time, Richard Slotman was married to the Debtor.  Although the Debtor made significant contributions toward the operation of the Business, the record establishes that Richard was the sole owner.  There is likewise no dispute that Richard Slotman re-transferred the Business back to Eugene Slotman in 2011, prior to the divorce action and prior to the filing of the Debtor's chapter 7 case, and that Richard Slotman received no consideration for this transfer.  The sole issue is whether the Debtor had a marital property interest in the Business at the time of the transfer, such that the transfer was of "an interest of the debtor in property" subject to avoidance under §§ 548 or 544.  See Corzin v. Fordu (In re Fordu), 201 F.3d 693, 701 (6th Cir. 1999) (the "pertinent question" in fraudulent conveyance action is "whether the [d]ebtor had a property interest in the [transferred funds] at the time they were transferred"); Lewis v. Summers (In re Summers), 320 B.R. 630, 648-49 (Bankr. E.D. Mich. 2005) ("Section 548 is clear. The Trustee may avoid any transfer of an interest of the debtor in property.").

Because the "Bankruptcy Code does not define 'property of the debtor,'" courts often look to § 541's definition of "property of the estate" for guidance.  Begier v. I.R.S., 496 U.S. 53, 58-59, 110 S. Ct. 2258, 2263 (1990); Stevenson v. J.C. Bradford & Co. (In re Cannon), 277 F.3d 838, 849 (6th Cir. 2002).  Section 541(a)(1) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  See In re OBrien, 443 B.R. 117, 129 (Bankr. W.D. Mich. 2011) ("Property of the estate, with few exceptions, is determined on the bankruptcy filing

date."). This definition is unquestionably broad, and it is well-settled that property of the estate includes "every conceivable interest of the debtor" held as of the commencement of the bankruptcy case, whether that interest is "future, nonpossessory, contingent, speculative [or] derivative."[5] In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993); see United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05, 103 S. Ct. 2309, 2313-14 (1983).

Relying on this broad definition, courts have held that when a debtor acquires an interest in marital property as a result of filing for divorce *prepetition*, that interest in martial property subsequently becomes property of the debtor's estate in a later filed bankruptcy case. See, e.g., Corzin v. Fordu (In re Fordu), 201 F.3d 693, 700-02 (6th Cir. 1999); In re Greer, 242 B.R. 389, 396-97 (Bankr. N.D. Ohio 1999). For example, in Fordu, the Sixth Circuit Court of Appeals held that, under Ohio law, the debtor-husband acquired an marital property interest in his wife's lottery winnings when the parties filed a petition for dissolution of their marriage. In re Fordu, 201 F.3d at 701. The lottery winnings were subsequently transferred to the wife under a separation agreement and divorce decree. When the debtor-husband filed a chapter 7 case approximately two years later, the trustee sought to avoid the transfer of the lottery winnings as a fraudulent conveyance. Because the debtor had a marital property interest in the lottery winnings at the time they were

---

[5] In avoidance actions, property of the debtor is sometimes understood to include "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." Begier, 496 U.S. at 58, 110 S. Ct. at 2263. Applying this definition, the Trustee argues that, but for the transfer, the Business would have become property of the marital estate upon the divorce filing, and ultimately part of the Debtor's bankruptcy estate upon the filing of her chapter 7 case. As explained in greater detail below, this court believes the Trustee's argument is overly simplistic, self-serving, and ignores the important temporal aspects of the transfer.

11

transferred to the wife pursuant to the separation agreement, the Sixth Circuit held that the transfer was subject to avoidance by the trustee. Id. at 702; see also In re Greer, 242 B.R. at 396-97 (under Ohio law, debtor-wife obtained a contingent marital property interest in husband's separately titled property *upon filing of divorce action*; this interest became property of the estate in debtor-wife's subsequent chapter 7 case).

The timing of the transfer in this adversary proceeding makes it distinguishable from Fordu. In that case, the potentially avoidable transfer occurred *after* divorce proceedings were initiated. Here, by contrast, the transfer of Richard Slotman's separately titled Business occurred *prior to* the divorce filing. This court must determine whether, and to what extent, the Debtor had an interest in the Business at the time it was transferred from Richard to Eugene Slotman. Because a debtor's "[p]roperty interests are created and defined by state law," the court's analysis shall be governed by Michigan law. Nobelman v. American Sav. Bank, 508 U.S. 324, 329, 113 S. Ct. 2106, 2110 (1993) (quoting Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979)); In re Fordu, 201 F.3d at 700 (citations omitted).

1. *Property Rights During Marriage.*

During a marriage, either spouse may own property individually and may use or dispose of that property without interference from the other spouse. See Canjar v. Cole, 770 N.W.2d 449, 453, 283 Mich. App. 723, 729-30 (2009). For married men, Michigan law has long recognized the "right to hold and manage property held individually" whether that property was "obtained before or after marriage." Canjar, 770 N.W.2d at 452-53, 283 Mich. App. at 728 (citing Burdeno v. Amperse, 14 Mich. 91, 92 (1866); Schmoltz v.

Schmoltz, 75 N.W. 135, 116 Mich. 692 (1898)) (additional citations omitted). Historically, this same right has not always applied to married women "because, at common law, the power and independent authority to act was vested in the husband alone." Canjar, 770 N.W.2d at 453, 283 Mich. App. at 728 (citing Snyder v. People, 26 Mich. 106, 109 (1872)). However, with the enactment of a set of mandates known as the married women's property acts, Michigan law now gives married women "the power to protect, control and dispose of property in their own name, free from their husbands' interference." Canjar, 770 N.W.2d at 453, 283 Mich. App. at 728-29 (citations omitted); see Mich. Const. 1963, art. 10, § 1; Mich. Comp. Laws Ann. § 557.21. Accordingly, married women's property rights are now "coterminous" with the rights of married men. Canjar, 770 N.W.2d at 453, 283 Mich. App. at 729.

In addition, Michigan is not a "community property" state. See In re Harajli, 469 B.R. 274, 279-80 (Bankr. E.D. Mich. 2009). Community property laws generally presume that all property not acquired by gift, behest, or devise belongs to the "community" created when two people marry. In re Field, 440 B.R. 191, 194 (Bankr. D. Nev. 2009) (discussing Nevada community property law); see Katherine D. Black et al., Community Property for Non-Community Property States, 24 Quinnipiac Prob. L.J. 260, 264-68 (2011). Each spouse is deemed to have a present, vested, one-half ownership interest in all community property (regardless of whether the property is actually acquired by the husband, the wife, or both) and each spouse has managerial rights to such property. Black et al., 24 Quinnipiac Prob. L.J. at 264-68 ("[S]pouses in community property states have present, vested, one-half ownership interests in community property with equal management, while

13

spouses in non-community property states do not."); see In re Harajli, 469 B.R. at 280 (community property laws give each spouse a one-half ownership interest in community property and usually restrict one spouse's ability to dispose of the property without consent of the other).  Michigan briefly enacted community property laws in 1947, but those laws have since been repealed.  In re Harajli, 469 B.R. at 279-80.

Accordingly, although Michigan law has left many legal structures, such as the tenancy by the entirety, "intact for the purpose of protecting the marital estate. . . , *nothing in the law today functions to prevent one spouse from acquiring property in an individual capacity without the consent of the other.*"  Canjar, 770 N.W.2d at 453, 283 Mich. App. at 730 (emphasis added).  Each married spouse also "has the power and authority to independently exercise his or her [property] rights free of the other spouse's interference."  Canjar, 770 N.W.2d at 453; 283 Mich. App. at 729-30 (citing Mich. Comp. Laws Ann. § 557.21; North Ottawa Community Hosp. v. Kieft, 578 N.W.2d 267, 457 Mich. 394, 406 (1998)).  This generally includes the right to transfer or sell separately owned property without the involvement of the other spouse.

2. *Property Rights Upon Divorce.*

When a married couple divorces, property rights are somewhat altered.  In a divorce action, the state court is required to divide all property that previously came "to either party by reason of the marriage."  Mich. Comp. Laws. Ann. § 552.19;[6] see Reeves v. Reeves,

---

[6] The statute provides that:
Upon the annulment of a marriage, a divorce from the bonds of matrimony or a judgment of separate maintenance, the court may make a further judgment for restoring to either party the whole, or such parts as it shall deem just and reasonable, of the real and personal estate that shall have

14

575 N.W.2d 1, 2, 226 Mich. App. 490, 493 (1997). The "property that is subject to apportionment is referred to as 'marital property,' and it is this property that comprises the marital estate." Byington v. Byington, 568 N.W.2d 141, 144, 224 Mich. App. 103, 110 (1997). Assets acquired or income earned by one spouse during the marriage are generally considered to be marital property. Byington, 568 N.W.2d at 144; 224 Mich. App. at 110. Separate property, which may include assets acquired or earned before the marriage, inheritances received by one spouse and kept separate from other assets, and personal injury recoveries for pain and suffering, is not subject to apportionment, except in certain statutorily-defined circumstances.[7] Cunningham v. Cunningham, 795 N.W.2d 826, 830, 289 Mich. App. 195, 201 (2010). "The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." Cunningham, 795 N.W.2d at 830, 289 Mich. App. at 201-02 (citations omitted).

The Trustee cites these controlling Michigan cases for the proposition that the Business, an asset acquired by Richard Slotman during his marriage to the Debtor, was marital property in which the Debtor had an interest. This assertion would likely be correct, if (a big "if") Richard Slotman owned the Business at the time the divorce proceedings were

---

come to either party by reason of the marriage, or for awarding to either party the value thereof, to be paid by either party in money.
Mich. Comp. Laws Ann. § 552.19.

[7] See, e.g., Mich. Comp. Laws Ann. § 552.23 (invasion of separate property permitted if assets awarded to one party are insufficient for that party's maintenance and support and the party shows additional need); Mich. Comp. Laws Ann. § 552.401 (separate property subject to apportionment when the other spouse "contributed to the acquisition, improvement, or accumulation of the property").

15

*filed*. However, the undisputed facts in this adversary proceeding establish that Richard Slotman transferred the Business to his father, Eugene, *prior to* the filing of the divorce action. As a result, this court must consider not only whether the Debtor had a marital property interest in the Business, but *when* that interest arose or was vested.

### 3. *When Do Marital Property Rights Vest?*

The court has not found, nor have the parties cited, any Michigan authority directly stating when the marital estate is created or when the parties' rights to marital property exist. In such circumstances, this court "must ascertain the state law from 'all relevant data,'" including the majority rule in other jurisdictions. Garden City Osteopathic Hosp. v. HBE Corp., 55 F.3d 1126, 1130 (6th Cir. 1995). As the Trustee acknowledges,[8] the overwhelming weight of authority from other jurisdictions supports the proposition that each spouse's interest in marital property vests upon the filing of the divorce action.[9] See, e.g., Brown v. Brown, Case No. 12-110, 2013 WL 2338233, *8-9 (E.D. Ky. 2013) (unpublished opinion) (under Kentucky law, marital property interests vest upon the filing of the divorce action); Gardner v. United States, 814 F. Supp. 982, 984-85 (D. Kan. 1993) (under Kansas

---

[8] In his Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment, the Trustee states that "[t]he view that a spouse's interest in marital property vests upon filing a divorce action is widely supported." See AP Dkt. No. 36, at 7-10. The Trustee expressly asserts "that Debtor's interest in the Business vested on May 23, 2011 when Richard filed for divorce." Id. at 10.

[9] Some jurisdictions hold that the vesting of the marital property interests occurs upon entry of the judgment of divorce. See, e.g., In re Kane, 628 F.3d 631, 641 (3d Cir. 2010) (under New Jersey law, "the right to equitable distribution of marital property arises upon entry of the judgment of divorce") (citing N.J.S.A. 2A:34-23(h)) (additional citations omitted). This possible distinction is not relevant in this case, because the transfer of the Business pre-dated both the filing of the divorce action and the entry of the divorce decree (which has yet to occur).

16

law, the filing of the divorce action "creates a species of common or co-ownership in one spouse in the jointly acquired property held by the other") (citing Cady v. Cady, 581 P.2d 358, 224 Kan. 339, 344 (1978)); In re Greer, 242 B.R. at 395 (under Ohio law, a spouse's undivided interest in separately titled property is lost upon commencement of divorce proceedings and other spouse acquires a contingent marital property interest) (citing Bolinger v. Bolinger, 551 N.E.2d 157, 160, 49 Ohio St.3d 120, 123 (1990)); In re Wilson, 85 B.R. 722, 725-26 (Bankr. E.D. Pa. 1988) (under Pennsylvania law, the "right to seek equitable distribution 'vests' at the time the divorce proceeding is commenced."). The Supreme Court of Colorado has explained its "pragmatic approach" to this issue as follows:

> During the marriage, and absent any divorce action, the parties have their separate property and, possibly subject to an exception or two, can dispose of it as he or she desires. . . . [I]t has always been the law [in Colorado] – and still is – that in the dissolution proceeding a wife may be entitled to a division of the husband's property. That right, prior to the dissolution action and possibly subject to an exception or two, is completely inchoate.

> However, at the time of the filing of the dissolution action in which the division of property will be later determined, a vesting takes place. This interest which has vested is inchoate only in the sense that, prior to the division, the property to be transferred to the wife has not yet been determined.

In re Questions Submitted by United States District Court re Imel v. United States, 517 P.2d 1331, 1335, 184 Colo. 1, 9-10 (1974).[10]

This court concludes that the approach taken by the Colorado Supreme Court is consistent with Michigan law. See United States v. Patej, 2003 WL 701392, at *4 (E.D.

---

[10] In deciding the certified question submitted in this case, the Supreme Court of Colorado interpreted Colo. Rev. Stat. Ann. 46-1-5 (1963) and 46-1-13 (1971 Cum. Supp.). These statutes are not identical to Mich. Comp. Laws Ann. § 552.19; however, for purposes of this opinion, the statutes are similar in all material respects.

Mich. Jan. 17, 2003) (unpublished opinion) (holding, based on the law in other jurisdictions, that wife's interest in "marital assets" did not defeat federal tax lien because, under Michigan law, that interest was *inchoate* until her divorce") (emphasis added). During the marriage, each spouse may hold property individually, and with some possible exceptions,[11] may dispose of that property as he or she chooses.  See Canjar v. Cole, 770 N.W.2d 449, 452-53, 283 Mich. App. 723, 728 (2009).  While the parties are married, the marital property interest of one spouse in property owned by the other spouse is inchoate. However, upon the filing of divorce proceedings, the marital estate is created, and each spouse's interest in marital property vests, i.e., comes into existence.

4. *Application in this Adversary Proceeding.*

These principles compel this court to soundly reject the Trustee's argument that the prepetition, pre-divorce conveyance of the Business from Richard to Eugene Slotman was a transfer of an interest of the Debtor in property.  At the time of the conveyance in 2011, Richard Slotman was the sole owner of the Business.  As Richard Slotman's spouse, the Debtor had, at most, a inchoate marital property interest in the Business.  The Debtor's interest in marital assets vested upon the filing of the divorce action.  However, by that time, the Business had already been transferred from Richard Slotman to Eugene Slotman. Although the Debtor's marital property interests became property of the bankruptcy estate

---

[11] One such exception may arise when the titled spouse transfers property acquired during the marriage prior to the filing of a divorce action "in a deliberate attempt to defraud the other's 'marital rights.'" See Comment, The Maine Marital Property Act: The Duties of Divorce Courts and the Right to an Equitable Share of Marital Assets, 31 Me. L. Rev. 333, 361-62 (1979-1980) (discussing Sanditen v. Sanditen, 496 P.2d 365 (Okla. 1972)).  This potential exception is addressed in greater detail infra.

in her subsequent chapter 7 case, the Business was not included among the marital assets because it was transferred prior to the divorce proceedings.[12]

This is not to say that the Debtor (and by extension, the Trustee) is without recourse if Richard Slotman transferred the Business to his father in anticipation of the divorce or with an intent to keep the Business out of the marital estate. Divorce proceedings are equitable in nature, and the "goal of the court when apportioning a marital estate is to reach an equitable division in light of all the circumstances." Byington, 568 N.W.2d at 146, 224 Mich. App. at 114; see Sparks v. Sparks, 485 N.W.2d 893, 901, 440 Mich. 141, 159 (1992) (property divisions "need not be equal," but "must be equitable"). When dividing the marital estate, the court considers many factors, including "the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health, and needs, fault or past misconduct, and any other equitable circumstance." Byington, 568 N.W.2d at 146, 224 Mich. App. at 115 (citing Sparks, 485 N.W.2d at 901, 440 Mich. at 158-60).

---

[12] If the court accepted the Trustee's marital property argument, weird results in contravention of Michigan law would occur. One hypothetical fact situation illustrates the fatal flaw in the Trustee's argument.

Assume a wife is solvent (and rich). She gives a gift to her son, daughter, friend or whoever, within the Michigan statute of limitations regarding recovery of fraudulent transfers. See Word Investments, Inc. v. Bruinsma (In re TML, Inc.), 291 B.R. 400, 431 (Bankr. W.D. Mich. 2003) (under Michigan's Uniform Fraudulent Conveyance Act, the predecessor of the MUFTA, recovery may occur for transfers made within six years of the date of the action to avoid them). The transfer is of the wife's separate property. No divorce action is pending. Is the wife's transfer avoidable as to the husband's creditors? This court answers "no." The solvent wife may dispose of her separate property as she sees fit. The husband's sole (non-joint) creditors have no reason to complain. The Trustee's view of inchoate marital property interests is not the law; nor should it be the law, in Michigan or in other non-community property jurisdictions. See cases cited in Part V.B.3 supra.

19

One spouse's "attempt to put marital assets outside [the other's] reach" is among the equitable factors the trial court may consider in dividing the marital estate. See Thames v. Thames, 477 N.W.2d 496, 502, 191 Mich. App. 299, 310 (1991). In Thames, the former husband transferred cash and stock into an irrevocable trust for the benefit of the couple's minor child, without informing his wife. Approximately one month later, the wife filed a complaint for divorce. The trial court found that the husband "established the trust in anticipation of the divorce" with the goal of putting the trust assets "beyond [his wife's] reach." Thames, 477 N.W.2d at 498-99, 191 Mich. App. at 301. The Court of Appeals affirmed the trial court's determination that the trust assets were part of the marital estate. The court explained that the trial court generally lacks authority to adjudicate the rights of third parties in divorce actions, but that an "exception to this general rule exists when it is claimed that a third party has conspired with one spouse to deprive the other spouse of an interest in the marital estate." Thames, 477 N.W.2d at 499, 191 Mich. App. at 302. A similar exception applies when one spouse seeks to deprive the other of marital property by transferring the property into a trust for the benefit of a third party. Id. In such circumstances, the court may consider the trust corpus to be an asset of the marital estate. Id. The Court of Appeals also held that the trial court properly considered the husband's actions when making its equitable division of the property. Thames, 477 N.W.2d at 502, 191 Mich. App. at 309.[13]

---

[13] The Trustee relies on an unpublished Michigan Court of Appeals case to suggest that the Debtor may also have a cause of action to avoid the transfer of the Business as a pre-divorce fraudulent conveyance. Davis v. Davis, No. 175102, 1996 WL 3362140 (Mich. App. July 30, 1996) (unpublished opinion). In Davis, the husband assigned his interest in a land contract to Alden Halpert. Ten months later, the wife filed for divorce.

20

Similarly, in the Debtor's divorce case, the state divorce court may consider Richard Slotman's actions in transferring the Business to his father when it makes its equitable division of the parties' marital property. If, after entry of the state court's divorce decree, the Trustee believes that the Debtor did not receive reasonably equivalent value for the property interests transferred thereunder, the Trustee may then seek to avoid the transfers made pursuant to the divorce decree. See Corzin v. Fordu (In re Fordu), 201 F.3d 693 (6th Cir. 1999) (transfer of marital property pursuant to a prepetition separation agreement and divorce decree was a "transfer of an interest of the debtor in property" that was subject to avoidance by the trustee in the debtor-husband's subsequent chapter 7 case).

C.      *Turnover and Unjust Enrichment*.

Although the parties have focused their summary judgment arguments on the fraudulent transfer counts of the Trustee's complaint, this court's conclusion that the Debtor lacked an interest in the Business also compels dismissal of the Trustee's turnover and unjust enrichment claims. Like the fraudulent transfer causes of action, a claim for

---

The wife then sued the husband and Halpert, alleging that the transfer constituted a fraudulent conveyance. The Court of Appeals held that although the wife was not a creditor at the time of the assignment because the divorce proceeding had not yet begun, she was a "future" creditor for purposes of the Michigan Uniform Fraudulent Conveyance Act. When the divorce action was filed, the wife became the holder of a "contingent" claim, pending the divorce court's ruling or the parties' property settlement. Therefore, the wife had standing to seek to set aside the assignment as a fraudulent conveyance.

The Court of Appeals concluded however, that the trial court imposed the wrong remedy when it set aside the assignment and restored the property to the marital estate. First, the trial court failed to consider whether Halpert was a bona fide purchaser. Even if he was not, the Court of Appeals held that "[t]he most the trial could have done [was to] impose an equitable lien in favor of [the wife] against the subject property to the extent of her claim against [the husband]." Davis, 1996 WL 33362140 at *3-*4.

This court has reviewed the unpublished Davis opinion and finds that it does not persuasively assist in the analysis of the issues presented in this adversary proceeding.

21

turnover under § 542[14] requires the Trustee to prove that the property to be turned over is property of the Debtor's bankruptcy estate.  See United States v. Chalmers (In re Wheeler), 252 B.R. 420, 425 (W.D. Mich. 2000) ("[F]undamental to the concept of turnover under § 542(a) is that the asset to be turned over must be property of the debtor's bankruptcy estate as defined by the Bankruptcy Code."); Alofs Mfg. Co. v. Toyota Mfg., Ky., Inc. (In re Alofs Mfg. Co.), 209 B.R. 83, 89-91 (Bankr. W.D. Mich. 1997) ("It is well established that the burden of proof is on the party seeking turnover of property of the estate[.]").

Reiterating the uncontested facts, Richard Slotman transferred the Business prior to the filing of the divorce case, at a time when he was the sole owner.  Upon the filing of the divorce, the Debtor's interest in marital assets was first vested.  By this time, Richard no longer owned the Business.  Therefore, the Business did not become part of the marital estate and was not included among the marital property interests that became property of the Debtor's bankruptcy estate upon filing of her chapter 7 case.

The Trustee's claim for unjust enrichment must also be rejected.  "The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make

---

[14] Section 542 states that:
[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
11 U.S.C. § 542(a); see also Bailey v. Suhar (In re Bailey), 380 B.R. 486, 490 (Bankr. 6th Cir. 2008) (discussing the elements of a turnover action under § 542(a)).  Under § 363, the trustee may "use, sell, or lease . . . property of the estate."  11 U.S.C. § 363(b)(1); see In re Wheeler, 252 B.R. at 425.

restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." Buell v. Orion State Bank, 41 N.W.2d 472, 478, 327 Mich. 43, 56 (1950) (citations omitted). To prevail on an unjust enrichment claim, the Trustee must show that the Defendants received a benefit from the Debtor, and that it would be inequitable for the Defendants to retain that benefit. See Michigan Educ. Employees Mut. Ins. Co. v. Morris, 596 N.W.2d 142, 151, 460 Mich. 180, 198 (1999) (discussing the elements of unjust enrichment claims under Michigan law). The Trustee has failed to establish that the Defendants received a benefit from the *Debtor*, because the Debtor had, at most, an inchoate interest in the Business when it was transferred from Richard to Eugene Slotman. Therefore, the unjust enrichment count of the Trustee's complaint shall also be dismissed.

## VI. CONCLUSION.

For the foregoing reasons, this court concludes that the Debtor did not have a marital property interest in the Business at the time it was transferred. To the extent the Trustee's complaint relies upon this asserted marital property interest, the complaint shall be dismissed for no cause of action. However, the Trustee may attempt to prove (although it appears to be a factual stretch) that the Debtor was conveyed a direct interest at the time Eugene Slotman transferred the Business to the Debtor's husband, Richard Slotman. A separate order partially granting the Defendants' motion for summary judgment shall be entered accordingly.

Dated this 5th day of December, 2013,
at Grand Rapids, Michigan.

Honorable James D. Gregg
United States Bankruptcy Judge

23